UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Venus A. Graf,                )
                              )
    Plaintiff,                )
                              )
v.                            )   No. 17 CV 50086
                              )   Magistrate Judge Iain D. Johnston
Nancy A. Berryhill, Acting    )
Commissioner of Social Security, )
                              )
    Defendant.                )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Venus Graf, a 44-year-old mother of four children, is seeking benefits under both Title II and Title XVI. For at least a decade, she has suffered from an assortment of physical and mental impairments. These include chronic colitis, ulcerative proctitis, polycystic ovarian syndrome, myofascial pain, degenerative disc disease, occipital nerve damage, sleep apnea, obesity, depression, anxiety, and obsessive compulsive disorder. Her symptoms have fluctuated somewhat over the years, with certain problems becoming more prominent than others at times, but her primary symptoms at the time of the administrative hearing were diarrhea; fecal and urinary incontinence; headaches; and back, hip, and neck pain. She testified that she goes to the bathroom 10 to 15 times a day because of her diarrhea, has 2 to 3 "fetal [sic] accidents" a day, and wears protective undergarment. R. 69-70. She had daily headaches lasting "from a couple of hours to 48 hours." *Id.* at 71. She described her body pain as follows: "[It] is in my neck, my head, my shoulders, my back, my lower back, my hips, goes down into the left side of my butt and wraps around that hip, down into the groin." R. 75-76. She typically takes two to three naps during the day because she cannot sleep through the night. She has been treated by a series of

1

doctors and gone to several pain clinics, with varying treatments being tried, including trigger point injections, nerve blocks, radiofrequency ablation, as well as more conservative measures such as physical therapy and at-home exercises. She also has taken pain medications (*e.g.* Norco and Dilaudid) and has undergone diagnostic tests, including repeated MRIs and colonoscopies.

The administrative law judge ("ALJ") found plaintiff was not disabled primarily because the ALJ concluded that plaintiff's testimony, as described above, was not believable. At 20 pages, the ALJ's decision is long, but it is mostly a fact-heavy narrative of plaintiff's long medical history. (The record in this case is nearly 1800 pages—roughly triple the length this Court typically sees.) The decision contains relatively less explicit analysis, and the ALJ did not set forth all her conclusions neatly in one place. However, in reviewing the decision, the Court discerns four main rationales. First, the ALJ concluded that plaintiff's allegations were undermined by mild examination findings and test results, such as plaintiff having a normal gait. Second, the ALJ found that plaintiff "only intermittently reported symptoms" and, when she did so, she described them as being less frequent and severe than she later portrayed them at the hearing. R. 39. Third, the ALJ placed weight on plaintiff's daily activities. These included the normal range of life activities (cooking, cleaning, driving a car, etc.) but also plaintiff's duties as "a single parent, raising four children, ages 13, 12, 10, and 8." R. 28. Fourth, the ALJ suggested in various ways that plaintiff's treatments had led to improvement. For example, the ALJ described how plaintiff's "most recent treatment notes" (from November 2015, just a few months before the hearing) indicated that her problems were largely under control. R. 36.

In this appeal, plaintiff's main argument—and the one the Court finds justifies a remand—is that the ALJ's rationales were not grounded on any medical opinion and that the

ALJ therefore was impermissibly "playing doctor." *See Lewis v. Colvin*, No. 14 CV 50195, 2016 U.S. Dist. LEXIS 115969, *11 n. 3 (N.D. Ill. Aug. 30, 2016).

This conclusion is demonstrated most directly by the fact that no medical opinions supported the ALJ's specific analyses of the medical record or her specific RFC finding. The ALJ did not call a medical expert at the hearing to testify about plaintiff's physical impairments.[1] There was a physical consultative examination, but the ALJ did not rely on it in any meaningful way. The ALJ rejected opinions from two of plaintiff's treating physicians (more on this below). The ALJ only gave some weight to the opinions of the Agency doctors, finding that these opinions were rendered without having seen "later submitted evidence." R. 40. The lack of any opinion supporting the ALJ's analyses strongly suggests that the ALJ was playing doctor, especially given the need to sort through a complex medical record addressing numerous and sometimes overlapping conditions. *See Bates v. Colvin* , 736 F.3d 1093, 1101 (7th Cir. 2013) (remanding where no medical opinion from a consultative physician or other medical evidence supported the ALJ's findings).

The ALJ's doctor playing is also demonstrated, in a more subtle way, in the narrative portion of the decision. There, the ALJ summarized the doctor visits and medical findings in an ostensibly neutral manner. This section was important given that the later analysis is sparse. Also, several larger conclusions emerge from this section, including the claim that the objective findings were mild, which was used to discredit the opinions of plaintiff's treating physicians, and the claim that plaintiff's condition improved with treatments. However, in reviewing this section and checking the ALJ's descriptions against the source materials, the Court finds that

---

[1] However, the ALJ did call an expert to testify about plaintiff's psychological impairments. Perhaps the ALJ believed that the psychological impairments were the more central problem. In this appeal, plaintiff raises no arguments based on those impairments.

3

there are a number of instances where the ALJ made low-level medical judgments about the importance of particular pieces of evidence or relied on unstated but unproven medical assumptions (both examples of doctor playing) or omitted evidence contrary to the ALJ's rationales (an example of the more general problem of cherrypicking). The Court will not enumerate all these instances, and some are not as significant as others and perhaps would not justify a remand on their own. But cumulatively, they further confirm the general need for a medical expert in this case. Set forth below are a four examples to illustrate the point.

> Consider first the following passage addressing plaintiff's headaches:
>
> The claimant's December 2007 MRI of her head was unremarkable. Despite this, the claimant reported to Dr. Multack in February 2008 that her headaches had worsened.

R. 33 (citations omitted). On the surface, this passage might be viewed as a factual summary devoid of analysis. But the juxtaposition of these two sentences, combined with the transitional phrase "despite this," suggest that the ALJ did not believe that plaintiff's claim of worsening headaches was credible *because* there was a recent "unremarkable" MRI.[2] The hidden medical assumption being deployed is that an MRI can detect the headaches. But the Seventh Circuit has explained why this assumption is flawed:

> [T]he ALJ[']s reliance on Moon's "unremarkable" 2008 MRI as evidence that her migraines were not a significant problem is not supportable. No doctor ever suggested that the MRI evidence meant anything about Moon's migraines, and for good reason. Doctors use MRIs *to rule out other possible causes of headache*— such as a tumor—meaning that an unremarkable MRI is completely consistent with a migraine diagnosis. See "Migraines: Tests and Diagnosis," Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/migraine-headache/basics/tests– diagnosis/con–20026358 (visited Aug. 13, 2014). This mistaken reading of the

---

[2] In general, the ALJ's use of contrast-signaling transitional phrases (such as "despite this," "however," and "but") are tip-offs that medical judgments were being made about the relative importance of competing medical findings. *See, e.g.*, R. 35 ("December 2014 imaging of the claimant's lumbar spine revealed degenerative changes, most significant at L4 through S1, *but* there was no obvious fracture or significant spondylolisthesis"); R. 34 (Upon examination, the claimant was noted for paraspinal tenderness. *However*, her gait was normal.") (emphases added).

evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.

*Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (emphasis in original). Here too, the ALJ cited to no evidence suggesting that the doctor in question doubted plaintiff's allegations. As the ALJ later noted, this doctor prescribed an additional medication in response to plaintiff's complaints about worsening headaches. R. 33.

As a second example, consider the following:

> The claimant's November 2014 colonoscopy showed a small polyp and inflammation in the rectum. Her findings were otherwise stable with her April 2011 EGD and colonoscopy.

R. 37 (citations omitted). The impression created here is that the doctor in 2014 compared the present colonoscopy findings to those from 2011 and concluded that plaintiff's problems were, with two exceptions aside, "stable." But in looking at the 2014 report, the Court can find no evidence that the doctor made such a comparison. In short, the "stable" finding was made by the ALJ. Perhaps the ALJ's intuitions will be proven correct, but this is a judgment that should be made by a doctor in the first instance. *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (remanding because the ALJ improperly played doctor: "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment."); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJs should not "play doctor" by summarizing the results of a medical exam without input from an expert).

For the third example, there is the following:

> In March 2015 and April 2015, the claimant's physical examinations showed tenderness in her spine, but all other signs were unremarkable. Despite this, the claimant reported increased pain, so her Norco dose was adjusted upwards.

R. 35 (citations omitted). This summary contains several problems. First, as suggested by the phrase "despite this," the ALJ was essentially making a judgment that certain objective findings (*i.e.* something more significant than mere spinal tenderness) must be present to corroborate plaintiff's pain allegations. However, as the Seventh Circuit has stated, ALJs should "rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon*, 763 F.3d at 722.[3] Second, the ALJ omitted some findings that were favorable to plaintiff. The ALJ suggested that the only remarkable finding supporting plaintiff's pain allegation was tenderness of the spine; however, the nurse also wrote in her notes that plaintiff exhibited a "painful range of motion." R. 1727. Third, this passage illustrates another concern seen throughout the decision. The ALJ often summarized the medical findings but then omitted, or downplayed, the doctor's diagnoses and treatment recommendations. The net effect is that the doctors were mostly left out of the narrative. In many instances, these doctors recommended further treatments or medications, which suggests that they did not doubt plaintiff's pain allegations. In the specific example above, the ALJ's description suggested that plaintiff's report of "increased pain" was not supported by the mild examination finding, but this raises a question why the doctor then went on to increase plaintiff's dosage of Norco.[4]

For the fourth and final example, there is the following passage – an important one because it summarized plaintiff's most recent treatment before the hearing and therefore bolstered the impression that plaintiff's problems were on the upswing:

> The claimant's most recent treatment notes show that the claimant was discharged from physical therapy on November 4, 2015, as she had met nearly all of her goals.

---

[3] *See also Hardy v. Berryhill*, Case No. 17-3264, at p. 6 (7th Cir. Nov. 8, 2018) ("Dr. Bauer's findings that Hardy's 'balance, gait, and coordination were intact' and Dr. Bauer's observations that Hardy walked without a limp, his motor skills and fine motor skills were normal, and his reflexes were normal. But it is not clear how these findings undermine Hardy's claim of disability in his *back*.") (emphasis in original).

[4] The Court notes that there is some contrary evidence that supports the ALJ's theory. At least one doctor (Dr. Minore) had some concern about whether plaintiff should continue receiving pain medication. *See* R. 35.

> Her pain level had decreased, and her flexibility had increased. She was instructed to continue performing home exercises. As a whole, the record indicates the claimant has tenderness in her spine but retains good strength, a functional range of motion, and normal sensation. She has a normal gait. She has experienced good pain relief with conservative treatment measures and has not been recommended for back surgery. She has not reported any side effects from her medication.

R. 36 (citations omitted). But in reviewing the underlying treatment notes from which this summary was derived, the Court notes that a number of facts, favorable to plaintiff, were omitted. For example, the ALJ left out the following statement: "PALPATION: The patient *continues* to have *marked palpable pain* generally with any anterior or posterior mobilization of the thoracic or lumbar spine. There is also discomfort with mobilization of the right costovertebral joints." R. 1667 (emphasis added). The ALJ also omitted several facts helpful to plaintiff from the assessment section, which states as follows:

> ASSESSMENT: The patient has met all of her short-term goals and has met her long-term goals, except trunk flexion has improved to 50% of normal available range versus her goal of 75 %. *The patient has not met her goal to achieve a 3 to 4/10 pain range 50% of the days.* She does have days where the pain is to the 3-4 level approximately 25% of the time. Overall, *pain has been consistently in the 5 to 6/10 range.*

R. 1667-68 (emphasis added). By leaving out these facts, the ALJ created a more optimistic and therefore arguably misleading picture.

Returning to the larger picture, the ALJ relied on her judgments about the significance of various medical findings to reach the broader conclusion that plaintiff had "*generally* mild physical examination signs and imaging studies." R. 40 (emphasis added). This in turn was cited as one of main reasons for rejecting the opinion of Dr. Christina Huynh, plaintiff's treating physician. (The other rationale was that the doctor's opinion was supposedly inconsistent with plaintiff's daily activities, an issue discussed below.) Specifically, on May 24, 2013, Dr. Huynh completed a Residual Functional Capacity Questionnaire. She stated that plaintiff had been her

7

personal patient since 2012 and had been a patient of the clinic "since 2006 at least." R. 901. She diagnosed plaintiff with multiple conditions and described her prognosis as "poor" based a long list of symptoms. She opined, among other things, that plaintiff could only sit 45 minutes at a time, would need to take unscheduled breaks, and would miss work more than four times a month. These restrictions, if accepted, would mean that plaintiff was disabled and could not do sedentary work as the ALJ found. In rejecting this opinion, the ALJ second-guessed the doctor's judgment based on the ALJ's belief that the medical findings were only "mild" (a medical judgment) and that those findings were inconsistent with plaintiff's allegations (a second medical judgment).[5]

In sum, the Court finds that a remand is warranted based on the above arguments. There are three remaining issues that deserve comment. First, regarding the ALJ's reliance on plaintiff's daily activities, both as a general rationale and as a ground for rejecting the opinions of two treating physician opinions, the ALJ did not explain why these activities were inconsistent with plaintiff's allegations. Most of these activities, such as preparing simple meals and cleaning, presumably could be structured around plaintiff's limitations, such as her need to nap and lie down. Many of these activities also could be done piecemeal, in smaller time chunks, consistent with Dr. Huynh's finding that plaintiff could only sit 45 minutes at a time. On remand, the ALJ should address this issue in more detail.

A second issue concerns plaintiff's argument that the ALJ, in finding that plaintiff's headaches and diarrhea were not as frequent as plaintiff claimed they were, made no alternative

---

[5] The ALJ also rejected a similar opinion from Dr. Haheer Shatat, who worked at the same clinic. On November 10, 2015, Dr. Shatat opined, among other things, that plaintiff would only be able to sit for 20 minutes at a time. R. 1672. The ALJ rejected this opinion on the same grounds that she rejected Dr. Huynh's opinion, stating that the opinion was "not supported by the medical evidence of record." R. 40. The only specific example given was that plaintiff had "been consistently noted for having a normal gait." *Id.* The ALJ also, again, claimed that the opinion was inconsistent with plaintiff's daily activities. The same concerns discussed above apply to Dr. Shatat's opinion.

finding about how frequent the ALJ believed those problems were. The ALJ agreed that these two problems were severe impairments at step two, but she included no limitations for them in the RFC. Plaintiff thus questions whether the ALJ simply concluded that plaintiff had no such symptoms. This is an issue that the ALJ should address with more specificity. In reading the briefs, the parties at times resorted to vague terminology, making it unclear to this Court what frequency levels were being contemplated. For example, the Government at one point asserted that the medical record did "not reflect regular incontinence that would interfere with sedentary work." Dkt. #29 at 12. It would be helpful to know, for example, exactly what the Government means by "regular incontinence," which insofar as this Court can tell is not a diagnostic label used by plaintiff's treating doctors. It is also not clear whether the ALJ ever considered the possibility that plaintiff's symptoms were episodic, and therefore may have changed somewhat from doctor visit to doctor visit. Even if the ALJ believed that plaintiff had exaggerated her symptoms somewhat, this does not mean that the ALJ can simply shut down the analysis and then deem every allegation to be untrue. *See Booth v. Colvin*, No. 14 CV 50347, 2016 U.S. Dist. LEXIS 82754, *6 (N.D. Ill. June 27, 2016) *citing United States v. Edwards*, 581 F.3d 604, 612 (7th Cir. 2009) (rejecting the "false in one, false in all" theory). The ALJ should discuss the different symptoms separately without lumping them all together into one generalized "not credible" category.

The third issue concerns an argument the Government raised in its response brief regarding only the Title II application for disability benefits. The Government argued that plaintiff, in her opening brief, had not raised any challenges to the ALJ's finding that plaintiff did not qualify as disabled by her last date insured of December 31, 2008. The ALJ considered this question separately from whether plaintiff could qualify as disabled under the Title XVI

application filed in April 2013. The Government noted that plaintiff's opening brief "did not cite to or rely on any substantial evidence pre-dating her date last insured" and that plaintiff has therefore waived any arguments regarding the denial of the Title II claim. Dkt. #29 at 14. This Court finds this argument persuasive. In her reply brief, plaintiff never responded to this argument, resulting in a further waiver.

In remanding this case, the Court is not dictating that any particular result be reached on remand, nor is it suggesting that the ALJ's current rationales could not be relied on if they were further developed and supported by a medical opinion. The evidence does not uniformly point toward a finding of disability. For example, as the Government noted in its brief, a month before the hearing, plaintiff "specifically denied experiencing fecal incontinence." Dkt. #29 at 3. But these are issues that should be addressed on remand with the assistance of a medical expert who can opine about plaintiff's various physical impairments. *See* HALLEX I-2-34A.2.

## CONCLUSION

Plaintiff's motion for summary judgment is granted in part, the government's motion is denied in part, and this case is remanded for further consideration of plaintiff's Title XVI application for supplemental security income. The ALJ's decision to deny the Title II application for disability benefits is affirmed.

Date: November 16, 2018     By: _____
                                Iain D. Johnston
                                United States Magistrate Judge